UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| KURT SPARTZ, ) | |
| ) | CIVIL ACTION NO: |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| RICHARD BUSH, PATRICIA ) | MARCH 1, 2006 |
| WOLLENHAUPT, And LISA JASER ) | |

## JURISDICTION

1.  This case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

2.  Venue is based upon 28 U.S.C. §§ 1391 (b)(1) and (2). All of the Defendants reside in the District of Connecticut, and all of the acts or omissions giving rise to the claims herein arose in the District of Connecticut.

## PARTIES

3.  Plaintiff Kurt Spartz is a Connecticut resident currently living in Groton, Connecticut. He was incarcerated within the care, custody and control of the Connecticut Department of Correction between January 2003 and September of 2003. He is no longer incarcerated.

4.  Defendant Richard Bush was at all relevant times Health Services Administrator overseeing health services administration at Osborne Correctional Institution. As such he was

responsible for creating and/or maintaining the policies, procedures, practices and/or guidelines that governed the administration of health services to inmates, in particular medication administration. He is sued in his individual capacity.

5. Defendant Patricia Wollenhaupt was at all relevant times a primary Nursing Supervisor for Osborne Correctional Institution. As such, she was responsible for directly supervising the Osborne nursing staff, as well as creating and/or maintaining the policies, procedures, practices and/or guidelines that governed nursing care at Osborne, in particular medication administration. She is sued in her individual capacity.

6. Defendant Lisa Jaser was at all relevant times a primary pharmacy supervisor for Osborne Correctional Institution. As such, she was responsible for directly supervising the Osborne pharmacy staff, as well as creating and maintaining the policies, procedures, practices and/or guidelines that governed pharmacy work at Osborne, in particular medication administration. She is sued in her individual capacity.

7. At all times mentioned herein, each defendant was acting under color of state law.

### Claim for Relief

**(Deliberate Indifference – Failure to Provide Constitutionally Adequate Medical Care – Supervisory Liability against defendants Bush, Wollenhaupt and Jaser in their individual capacities pursuant to 42 U.S.C. § 1983)**

8. In 1984, plaintiff Kurt Spartz was diagnosed with rheumatoid arthritis, an autoimmune illness which primarily affects joint function.

9. Mr. Spartz was diagnosed with Crohn's Disease and/or ulcerative colitis in 1986.

Crohn's Disease and ulcerative colitis are inflammatory bowel diseases of the digestive system. Although they are lifelong illnesses, "flare ups" and inflammation can be successfully controlled through proper treatment and medication.

10. From the time of his diagnosis in 1986 to the time of his incarceration in January 2003, Spartz successfully controlled his inflammatory bowel disease through the use of prescribed medication.

11. On January 13, 2003 Spartz was ordered incarcerated after pleading guilty, under the Alford Doctrine, to a single count of Larceny in the First Degree (Conn. Gen. Stat. 53a-122). He was taken into custody that day.

12. As part of Spartz' sentencing, the Court's Mittimus specifically ordered that Spartz be maintained on "medical watch" and specifically stated that "Spartz needs prescription medications . . .."

13. At the time he was incarcerated, Spartz was taking three medications to treat his inflammatory bowel disease and his co-morbid rheumatoid arthritis: Sulfasalazine; Methotrexate; and Folic Acid. Sulfasalazine is an anti-inflammatory medication used to prevent "flare ups" in people with Chron's Disease and/or ulcerative colitis.

14. When Spartz was incarcerated, a limited quantity of each medication went with him. On January 13, 2003, Spartz was incarcerated at Corrigan Correctional Facility ("Corrigan"). While there, he received all appropriate medication in maintenance of his Crohn's disease.

15. While at Corrigan, Spartz had no "flare-ups" or other clinically significant symptoms associated with his inflammatory bowel disease.

3

16. On or about January 22, 2003 Spartz was transferred from Corrigan to Osborne.

17. At Osborne, Spartz was housed in what was known as "The Loft," a special section reserved for inmates over the age of fifty (50). The Loft was divided into two sections, Sections One and Two, each housing approximately seventy-five (75) inmates. Spartz was housed in Section One.

18. On several occasions in early to mid-February, the Osborne Medical Staff failed to provide Mr. Spartz with prescribed doses of Sulfasalazine.

19. Beginning in mid to late February, 2003, and continuing thereafter, the Osborne Medical Staff failed to provide Spartz with any doses of Sulfasalazine.

20. From mid-February of 2003 to approximately March 19, 2003 Spartz directed verbal and written requests for his prescribed Sulphasalazine to the Osborne Medical Staff.

21. Despite many repeated requests, the Osborne Medical Staff refused and/or failed to provide Spartz with the prescribed Sulphasalazine.

22. Beginning in early March 2003, Mr. Spartz began to experience a flare up of his inflammatory bowel disease.

23. From that time until March 19, 2003, Mr. Spartz' condition deteriorated as he began to experience increasingly frequent diarrhea, fever, nausea, stomach pain, and weight loss.

24. On March 11, 2003, after several requests for medical attention, Mr. Spartz finally saw Dr. Edwin Njuku, who noted that Mr. Spartz was most likely experiencing a flare-up related to Crohn's disease and was suffering from exhaustion.

25. Njuku prescribed prednisone, a steroid, for purposes of reducing the inflammation in Mr. Spartz' bowels. The prednisone regime was to begin at 60 milligrams four times per day and taper to zero over approximately one month's time.

26. The Osborne Medical Staff refused and/or failed to provide Mr. Spartz with even a single dose of the prescribed prednisone.

27. Mr. Spartz' condition continued to deteriorate such that by March 19, 2003 he was experiencing diarrhea accompanied by blood approximately twenty-four (24) times per day.

28. On March 19, 2003, Mr. Spartz' lost consciousness in the "telephone area" of the loft while on the phone with his girlfriend Gretchen Dutra.

29. Shortly thereafter, Mr. Spartz was admitted to the Osborne Correctional infirmary, where the Osborne Medical Staff noted that he felt dizzy; was shaking; was experiencing diarrhea every hour; had blood present in his stool; had heavy bleeding at times; and had vomited bile two to three times that day.

30. On March 20, Osborne Medical staff sent Kurt Spartz to University of Connecticut Health Center's John Dempsey Hospital.

31. A colonoscopy at John Dempsey Hospital revealed a severely inflamed bowel consistent with active Chron's Disease and/or ulcerative colitis.

32. On April 7, 2003, Mr. Spartz experienced a significant increase in his abdominal pain. Testing done at John Dempsey Hospital revealed a significant amount of free air in and around his colon, indicating that his colon had perforated.

33.     Mr. Spartz was taken urgently to an operating room where medical staff at John Dempsey Hospital performed a complete abdominal colectomy, whereby his colon was removed, and ileostomy, whereby an artificial excretory opening was surgically created through Mr. Spartz' abdominal wall into his ileum.

34.     As a result of his failure to receive medication and the ensuing flare-up of his inflammatory bowel disease, Mr. Spartz sustained severe, painful and permanent injuries. He sustained:

 a. a severe shock to his nervous system;

 b a progressively worsening bowel condition characterized by abdominal pain, nausea, diarrhea, dizziness, dehydration, weakness, and vomiting;

 c. a perforation of his colon caused by inflammation;

 d. a surgical procedure under general anesthesia requiring abdominal incisions, a complete abdominal colectomy and ileostomy;

 e. creation of a stoma or opening from his small intestine through his torso to drain feces, requiring him to wear an ostomy bag at all times;

 f. permanent scarring and disfigurement;

 g. permanent dieting changes;

 e. an increased risk of abdominal complications in the future;

 h. severe pain and suffering, distress of mind, embarrassment and humiliation;

35.     As a further result of his failure to receive medication and the ensuing flare of his inflammatory bowel condition, Mr. Spartz was required to expend sums for medical and surgical

care, visiting nurses, diagnostic imaging and related expenses, and will be required to expend additional such sums in the future.

36. As a further result of his failure to receive medication and the ensuing flare of his inflammatory bowel condition, Mr. Spartz has undergone additional gastrointestinal surgery whereby the remaining eighteen inches of his large intestine was removed, and will require further surgery in the near future.

37. As a result of such injuries, Mr. Spartz has a reduced ability to find work and earn a living.

38. The defendants were personally involved in and responsible for the deliberate indifference to Mr. Spartz' serious medical needs in that:

   a. They created a policy and custom, and they allowed the continuance of a policy and custom, under which inmates, including Kurt Spartz, would be deprived of adequate medical care; and

   b. They created a policy and custom, and they allowed the continuance of a policy and custom under which inmates, including Kurt Spartz had no means of acquiring prescribed medication that had not been administered; and

   c. They created a policy and custom, and they allowed the continuance of a policy and custom under which inmates, including Kurt Spartz were at serious risk of missing critical doses of prescribed medication; and

   d. They created a policy and custom, and they allowed the continuance of a policy and custom under which Osborne Medical Staff would fail to cure lapses in medication administration;

   e. They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein.

39. The acts and omissions of the defendants proximately caused Mr. Spartz' suffering and injuries.

40. By failing to provide Mr. Spartz with constitutionally adequate medical care, the defendants knowingly disregarded an excessive risk to Mr. Spartz' health and safety and knowingly subjected him to pain, physical and mental injury, thereby violating his rights under the Eighth and Fourteenth Amendments to the United States' Constitution.

### Prayer for Relief

**WHEREFORE**, plaintiff Kurt Spartz prays for relief as follows:

1. For compensatory damages according to proof;

2. For punitive damages;

3. For costs and reasonable attorneys fees; and

4. For such further relief as the Court deems just and proper.

THE PLAINTIFF,
KURT SPARTZ

By: _____
Joshua D. Lanning (ct24529)
JACOBS, GRUDBERG, BELT, DOW & KATZ P.C.
350 Orange Street
New Haven, CT 06503
Telephone No.: 203-772-3100
Facsimile No.: 203-772-1691
e-mail: jlanning@jacobslaw.com